IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

MARSHALL DIVISION

| | | |
|---|---|---|
| OTHA JAMES | § | |
| v. | § | CIVIL ACTION NO. 2:06cv342 |
| DIRECTOR, TDCJ-CID | § | |

**MEMORANDUM ADOPTING REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE
AND ENTERING FINAL JUDGMENT**

The Petitioner Otha James, proceeding *pro se*, filed this application for the writ of habeas corpus under 28 U.S.C. §2254 complaining of the legality of his conviction. This Court ordered that the case be referred to the United States Magistrate Judge pursuant to 28 U.S.C. §636(b)(1) and (3) and the Amended Order for the Adoption of Local Rules for the Assignment of Duties to United States Magistrate Judges.

James states that he was convicted of attempted murder in the 71st Judicial District Court of Harrison County, Texas, receiving a sentence of 80 years in prison.[1] He took a direct appeal and sought collateral relief in the courts of the State of Texas, to no avail, and then filed this petition for habeas corpus relief in federal court.

---

[1] The facts of the case, as stated by the Sixth Judicial District Court of Appeals, were as follows: On the evening of February 14, 2003, James stopped a vehicle passing in front of his girlfriend's residence and asked its occupants to call an ambulance because-according to him-his girlfriend, Maudie Couch, had just attempted suicide. When the police and the emergency crew arrived, they found Couch unconscious with a gunshot wound to the forehead. A .22 caliber rifle was found lying on Couch's hand. The police investigation developed forensic evidence inconsistent with the suicide theory. When Couch regained consciousness several days later, she informed the police that she did not attempt to commit suicide and that James shot her. At trial, Couch testified that she saw James approaching the closet where the gun was located and that she saw him with a gun, but did not remember anything further until she woke up in the hospital. A jury found James guilty of attempted murder. James v. State, --- S.W.3d ---, slip op. no. 06-04-00156-CR (Tex.App.-Texarkana 2005, pet. ref'd).

James raised nine grounds in his petition, including the following: (1) the trial court erroneously admitted hearsay evidence; (2) the 80-year sentence is outside the sentencing range and therefore illegal; (3) the indictment did not have an enhancement paragraph but the State conducted voir dire based on an enhanced range of punishment; (4) the State failed to preserve exculpatory evidence; (5) the investigative procedures of the State violated due process; (6) there is no evidence to support material elements of the offense; (7) ineffective assistance of counsel in a number of particulars; (8) cumulative error; and (9) actual innocence. The Magistrate Judge ordered the State to answer the petition and received copies of the state court records. James filed a response to the answer.

After review of the pleadings and records, the Magistrate Judge issued a Report on June 3, 2008, recommending that the application for habeas corpus relief be denied. James filed objections to the Report on July 28, 2008.

In his objections, James first cites Rule 52(b) of the Federal Rules of Criminal Procedure, concerning plain error in criminal cases. However, his state-court trial was not conducted under the Federal Rules of Criminal Procedure, and habeas corpus review of state court trials does not apply these Rules. Hence, James' citation to the Federal Rules of Criminal Procedure is inapposite.

Turning to the specific grounds, James first challenges the Magistrate Judge's conclusion that the trial court did not erroneously admit hearsay testimony. The challenge testimony is that of Dr. McWilliams, which James says is hearsay because the testimony simply "re-interpreted" the report of another physician, Dr. Guerra, who was deceased at the time of trial. The Magistrate Judge concluded that James' contention that Dr. Guerra's report had not been offered into evidence was factually incorrect and that the testimony of Dr. McWilliams, who had personally observed Maudie Crouch, the victim of the shooting, was not hearsay. In addition, the Magistrate Judge stated that Dr. McWilliams, who was board certified in emergency medicine, was qualified to testify as an expert even though he was not a neurosurgeon.

2

In his objections, James says that McWilliams' testimony was not merely cumulative to Dr. Guerra's report, that Dr. McWilliams had only been board certified for a short time at the time that he treated Crouch, and that Dr. McWilliams was "barely licensed to practice as a doctor." Thus, he says, Dr. McWilliams should have ben disqualified as an expert. He goes on to say that Dr. McWilliams testified that he did not know the circumstances of the injury and that he was only concerned with Crouch's breathing, and that Dr. McWilliams gave "a layman's opinion cloaked as an expert" regarding the impossibility of attempted suicide. Finally, James says, Dr. McWilliams offered "expert testimony in the field of ballistic homicide" and provided "neurological interpretation" for the State's case although he was only an emergency room physician.

As the Magistrate Judge said, Dr. McWilliams was the treating physician when Crouch was brought into the emergency room, and he testified as to his own observations of her. Dr. McWilliams, who was board-certified in emergency medicine, testified that he had dealt with over a hundred gunshot wounds, including suicide as well as homicide. James has failed to show any reason why Dr. McWilliams could not testify as to his own observations, or as an expert. James' first objection is without merit.

Second, James complains of the admission of a conviction more than ten years old and says that he did not receive sufficient notice to contest the enhancement paragraph presented by the State. He says that his sentence was illegal because an 80-year sentence is outside of the statutory range for a second-degree offense and that the trial court erred by allowing the State to use prior convictions to enhance the offense to a first-degree felony when the prior convictions had not been pleaded in the indictment.

The Magistrate Judge stated that James' claims in this regard were procedurally defaulted and lack merit in any event. Texas law does not require that prior convictions be pleaded in the indictment, but may be done separately; although James says in his objections that no such notice was filed, the record shows that the notice was filed on August 11, 2004. James' claim on this point is without merit.

3

James also argues, for the first time in his objections, that the prior convictions were over 10 years old. The Fifth Circuit has held that issues raised for the first time in objections to the Report of the Magistrate Judge are not properly before the District Court. *Finley v. Johnson*, 243 F.3d 215, 218 n.3 (5th Cir. 2001), *citing United States v. Armstrong*, 951 F.2d 626, 630 (5th Cir. 1992); *Cupit v. Whitley*, 28 F.3d 532, 535 n.5 (5th Cir. 1994). In any event, this claim plainly lacks merit; the Texas Court of Criminal Appeals has held that unlike the rule that a prior conviction too remote in time cannot be used for impeachment purposes, such a prior conviction may be used for enhancement purposes. *Hicks v. State*, 545 S.W.2d 805, 810 (Tex.Crim.App. 1977). James' second and third objections are without merit.

Fourth, James says that the State withheld exculpatory evidence by failing to conduct tests on Crouch's hands which would have shown whether or not she had recently fired the gun. The Magistrate Judge noted that unless the defendant can show bad faith on the part of the police, a failure to preserve potentially useful evidence does not constitute a denial of due process, and that conclusory allegations are not sufficient to show that the State acted in bad faith by destroying evidence with knowledge of its exculpatory value. In the present case, the Magistrate Judge said, Crouch's hands were not tested because even a positive test for gunshot residue on her hands would not have shown whether James or Crouch had fired the gun. The Magistrate Judge stated that James' claim was simply speculation that had additional tests been run, they might possibly have revealed some exculpatory evidence.

In his objections, James says that there were two theories as to what had happened - either Crouch shot herself, or someone else had shot her. He says that only one of these theories, that she had been shot by someone else, was investigated, and that had his allegations (i.e. that Crouch had attempted suicide) been pursued, the outcome of his trial would have been different.

Specifically, James says, if a forensic expert had tested Crouch's hands, hair, and clothing to determine if there was a high concentration of soot, powder burns, or stippling, the results of these tests, together with the position in which Crouch was laying and where she was holding the gun, would have been consistent with a suicide attempt.

As the Magistrate Judge said, however, James is simply speculating as to what these tests, had they been performed, would have showed. There was no dispute as to how Crouch was laying and how she was holding the gun; the evidence showed that the gun was across her legs and in her left hand, and Sgt. Reid McCain testified that the location where Crouch was found and where the gun was located could be consistent with a self-inflicted wound. The forensic tests which were run, by contrast, were not consistent with suicide - Crouch could not reach the trigger of the rifle when it was pressed against her forehead, and there was no evidence of blow-back or powder burns, as would have been present had the gun been pressed against her forehead when it was fired. There was no soot, stippling, or powder burns around the wound, which was inconsistent with a close-contact wound. As noted by the Magistrate Judge, even had evidence of powder been found on Crouch's hands or gown, this would not necessarily have been inconsistent with a conclusion that the wound was not self-inflicted, because it would simply have shown that Crouch was near the gun when it was fired. James has not shown that the State acted in bad faith by failing to preserve exculpatory evidence, nor even that there was any exculpatory evidence to be preserved. His objections in this regard are without merit.

Fifth, James argues that there was no evidence to support the conviction. He argues that the State did not prove that he shot her, but only presented evidence that she could not have shot herself. He says that she could have "pulled the trigger with her toe" so as to make the gun far enough away from her forehead that there would be no blow-back or powder burns.

The Magistrate Judge observed that evidence was introduced by James tending to indicate that Crouch may have attempted suicide, and that evidence was introduced by the State to refute the suicide theory. Crouch testified that she saw James open the door to the closet where the

5

rifle was kept and the next thing she remembered was waking up in the hospital; she said that she "saw James having a gun in his hand stepping out of the closet." She said that she did not shoot herself, that she and James were the only people in the house, and that James had threatened to kill her if she tried to kick him out of the house, which she had told him that she was going to do if he did not get a job by February 14.

The Magistrate Judge stated that in reviewing the sufficiency of the evidence in the context of habeas corpus proceedings challenging the judgment of a state court, the federal court's review is limited to determining whether, based upon the record evidence adduced at trial, no rational trier of fact could have found proof of guilt beyond a reasonable doubt. *Lucas v. Johnson*, 132 F.3d 1069, 1078 (5th Cir. 1998). The court's review of the evidence is conducted in the light most favorable to the verdict, *Selvage v. Lynaugh*, 823 F.2d 845, 847 (5th Cir. 1987), and the fact that the evidence was circumstantial does not mean that it is insufficient or that it will not support a verdict. *U.S. v. Ochoa*, 609 F.2d 198, 203 (5th Cir. 1980). The Magistrate Judge concluded that a rational trier of fact in this case could have found proof of guilt beyond a reasonable doubt. The fact that the evidence was primarily circumstantial and that evidence was offered to support the defense theory that Crouch had attempted suicide does not mean that the evidence was insufficient; as the Magistrate Judge stated, the jury is entitled to believe or disbelieve all or any part of any witness' testimony. *Barefoot v. Estelle*, 463 U.S. 880, 902 (1983). James' objection on this ground is without merit.

Next, James complains that he received ineffective assistance of counsel, in that his attorney, Brad Morin, failed to investigate the medical testimony or hire a neurosurgeon, failed to object to Dr. McWilliams' hearsay testimony or lack of qualifications, failed to hire a forensic expert, failed to secure an examination of Crouch's hands and clothing, failed to interview Wade Thomas or Dr. McWilliams, failed to investigate Reid McCain or Ivan Wilson, and failed to seek out other witnesses or other exculpatory evidence.

6

James fails to show any valid basis upon which Morin could have challenged Dr. McWilliams, either as to his qualifications as an expert or as to his testimony. He speculates that had a neurosurgeon been hired by Morin, such a witness could have shown that the path of the bullet was consistent with how Crouch was found at the scene. Similarly, James says that Morin should have hired a forensic expert, who could have shown that there was no room for James to stand at Crouch's right and shoot her at the angle from which she was shot, but the evidence showed that she was shot from right to left. He speculates that a forensic expert could have testified as to Crouch's mental state and to the fact that Crouch was "high on cocaine," and again argues that an examination of Crouch's hands and clothing could have revealed evidence supporting his theory of self-defense.

These assertions do not show that James received ineffective assistance of counsel. Instead, James simply speculates as to what might have been shown had additional evidence been obtained, but makes no showing that any such evidence would in fact have been consistent with his suppositions. The Fifth Circuit has held that a defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial. *U.S. v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989); *see also Moore v. Quarterman*, 534 F.3d 454, 462 (5th Cir. 2008) (rejecting theory that knowledge of a statement could have led to discovery of additional evidence or witnesses as too speculative); *Hughes v. Johnson*, 191 F.3d 607, 629-30 (5th Cir. 1999) (noting that claim of suppression of exculpatory evidence is "purely speculative" because the petitioner did not know whether or not there had been an internal investigation done, much less whether it had revealed exculpatory facts). James' speculations are not sufficient to support his contention that counsel was ineffective and his objections in this regard are without merit.

Similarly, James complains that Morin failed to investigate or interview various witnesses, including Dr. McWilliams, criminalist Wade Thomas, crime lab officer Ivan Wilson, and Sgt. Reid McCain. The Magistrate Judge discussed each of these witnesses and concluded that James had failed to show that he had received ineffective assistance of counsel, in that he failed to

7

indicate what a more thorough investigation would have revealed. James speculates that a forensic expert could have determined who fired the shot, the direction from which hit came, and determine within an inch where the shot had come from. He argues that counsel should have interviewed Thomas to determine why testing was not done on Crouch's hands, that Wilson's testimony was simply made up of suppositions, that Morin should have had McCain reconstruct the layout of furniture in the house, and that Morin should have been able to impeach and disqualify Dr. McWilliams. None of these objections have any merit, because all of them are based on nothing more than James' speculations as to what a more thorough investigation could possibly have showed. Similarly, although James complains that Morin failed to seek out other witnesses, including Lt. Best, Officer Gutierrez, and Officer Stone, he fails to show that these witnesses would have testified at trial or that their testimony would have been favorable to him; instead, he speculates that these witnesses "could have provided their belief that the offense at bar was that of a suicide attempt." *See Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985) (noting that in habeas claims involving counsel's failure to call witnesses, the petitioner must show that the witness' testimony would have been favorable and that the witness would have testified at trial; such claims are not favored because the presentation of witness testimony is essentially strategy and thus within the trial counsel's domain, and speculations as to what these witnesses would have testified is too uncertain).

James goes on to repeat his contention that counsel failed to seek out physical evidence, including the testing of Crouch's hands, clothing, and hair. As the Magistrate Judge noted, Morin was not appointed as James' counsel until some two weeks after the incident took place, and so little purpose could have been served in attempting to obtain samples from Crouch's hands or hair at that late date. The Magistrate Judge observed that there was no showing that the hospital preserved Crouch's hair shavings, and that these shaving would have been of little utility in any event; there was no dispute that Crouch had been shot in the head and so the discovery of gunpowder in her hair would hardly be surprising regardless of whether she had shot herself or someone else had done so. Nor has James shown that but for the failure to secure testing of her clothing, the result of

8

the proceeding would probably have been different. As noted above, the evidence at trial showed that Crouch's clothing would likely have some residue on it simply because of her proximity to the gun when it was fired, regardless of who had fired it. James' objections to the Magistrate Judge's conclusions concerning his assistance of counsel are without merit.

Next, James objects to the Magistrate Judge's conclusions concerning cumulative error. The Magistrate Judge said that federal habeas corpus relief may only be granted for cumulative errors where (1) the individual errors involved matters of constitutional law rather than mere violations of state law; (2) the errors were not procedurally defaulted for habeas purposes; and (3) the errors so infected the entire trial that the resulting conviction violates due process. *Yohey v. Collins*, 985 F.2d 222, 229 (5th Cir.1993). In applying this standard, the Magistrate Judge concluded that James has not shown that any of the alleged errors involved matters of constitutional law, nor that any alleged errors so infected his trial that the resulting conviction violated due process; in fact, the Magistrate Judge said, a review of the record does not show any errors by the trial court, nor that James received ineffective assistance of counsel.

In his objections, James says that ineffective assistance of counsel should not turn on a single isolated event, and that he has demonstrated "a series of unprofessional failings and damaging actions" by his attorney. He asks for an evidentiary hearing to determine if cumulative errors undermined the outcome of the proceeding.

Contrary to James' assertion, however, he has wholly failed to set out a series on unprofessional failings and damaging actions. When viewed in the context of the entire trial and not as a single isolated event, James has failed to show that he received ineffective assistance of counsel. His objections on this ground are without merit.

Finally, James contends that he is actually innocent of the offense. He acknowledges that a claim of actual innocence is not a basis for habeas corpus relief but is a gateway through which he must pass in order to have an otherwise barred claim considered on the merits. James says that he "meets the burden of the gateway" through his claim of ineffective assistance of counsel.

However, James does not point to any otherwise barred claim which he seeks to have considered on the merits by passing through the gateway of actual innocence. Instead, he is seeking to use his claim of actual innocence as a ground for habeas corpus relief, which the Fifth Circuit has said is not proper. *Dowthitt v. Johnson*, 230 F.3d 733, 742 (5th Cir. 2000). In addition, in order to establish actual innocence as a gateway, the petitioner must show that in light of new evidence, it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt. *See House v. Bell*, 126 S.Ct. 2064, 2077 (2006). The Magistrate Judge concluded that James had wholly failed to meet this standard even were actual innocence a viable claim in this case.

In his objections, James simply asks that an evidentiary hearing be granted and that all tangible evidence in the possession of the State be produced, and that he be allowed depositions under 28 U.S.C. §2246. The Fifth Circuit has held that bald assertions on critical issues in a habeas petition, unsupported and unsupportable by anything else contained in the record, are insufficient to warrant an evidentiary hearing. *Johnson v. Scott*, 68 F.3d 106, 112 (5th Cir. 1995), *citing Byrne v. Butler*, 845 F.2d 501, 513-14 (5th Cir.), *cert. denied*, 487 U.S. 1242 (1988). James' request for a hearing is wholly based on bald assertions, conclusory allegations, and unsupported suppositions. His objections to the Report of the Magistrate Judge are without merit.

The Court has conducted a careful *de novo* review of the pleadings in this cause, including the original petition and memorandum in support, the answer filed by the Respondent, the Petitioner's response thereto, the state court records, and all other pleadings, documents, and records in the case. Upon such *de novo* review, the Court has concluded that the Report of the Magistrate Judge is correct and that the Petitioner's objections are without merit. It is accordingly

ORDERED that the Petitioner's objections are overruled and that the Report of the Magistrate Judge is ADOPTED as the opinion of the District Court. It is further

ORDERED that the above-styled application for the writ of habeas corpus be and hereby is DISMISSED with prejudice. It is further

ORDERED that the Petitioner Otha James is hereby denied a certificate of appealability *sua sponte*. Finally, it is

ORDERED that any and all motions which may be pending in this action are hereby DENIED.

SIGNED this 26th day of February, 2009.

_____
T. JOHN WARD
UNITED STATES DISTRICT JUDGE